UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| AL JAMOUA,<br><br>    Plaintiff,<br><br>v.<br><br>MICHIGAN FARM BUREAU,<br>FARM BUREAU GENERAL<br>INSURANCE COMPANY OF<br>MICHIGAN,<br>FARM BUREAU LIFE INSURANCE<br>COMPANY OF MICHIGAN,<br>FARM BUREAU MUTUAL<br>INSURANCE COMPANY OF<br>MICHIGAN,<br>COMMUNITY SERVICE<br>ACCEPTANCE COMPANY,<br>PAUL WAGNER, and<br>DANNY NEGIN,<br><br>    Defendants. | Case No. 20-10206<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER
DENYING DEFENDANTS' MOTION TO CERTIFY SUMMARY-
JUDGMENT RULINGS FOR INTERLOCUTORY APPEAL [47]**

Al Jamoua was formerly an insurance agent for Farm Bureau General Insurance Company of Michigan and related entities ("Michigan Farm Bureau"). Jamoua is Chaldean and most of his customers were Chaldean or Arab. Jamoua alleges that during his agency, a Michigan Farm Bureau managing partner directed him not to sell insurance to people of "[his] culture." And, says Jamoua, Michigan Farm Bureau set insurance rates high in areas of southeast Michigan that have a significant population of people with Middle Eastern ancestry. According to Jamoua,

the managing partner's directive and the higher rates hampered his ability to sell insurance. Jamoua thus sued Michigan Farm Bureau for violating 42 U.S.C. § 1981, the employment-discrimination provision of Michigan's Elliott-Larsen Civil Rights Act, and the public-accommodations provision of ELCRA.

In time, Michigan Farm Bureau moved for summary judgment, which this Court largely denied. *See generally Jamoua v. Michigan Farm Bureau*, No. 20-CV-10206, 2021 WL 5177472 (E.D. Mich. Nov. 8, 2021).

Michigan Farm Bureau believes that in ruling on its summary-judgment motion, the Court made three errors. And the insurer prefers that the Sixth Circuit Court of Appeals correct those errors now rather than after an expensive and time-consuming trial. So Michigan Farm Bureau asks this Court to certify its summary-judgment rulings for interlocutory appeal. (*See* ECF Nos. 47, 49.)

A district court can certify an order for interlocutory appeal if three requirements are met: (1) the order "involves a controlling question of law," (2) "there is substantial ground for difference of opinion" about the answer, and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *In re Somberg*, — F. 4th —, No. 22-0101, 2022 WL 1164852, at *1 (6th Cir. Apr. 20, 2022). In this context, an "order" "refers to a specific direction or command from the district court, not to the document or opinion in which the court explains that direction or command." *Little v. Louisville Gas & Elec. Co.*, 805 F.3d 695, 699 (6th Cir. 2015). "Review under § 1292(b) is granted

sparingly and only in exceptional cases." *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002). This is not an exceptional case.

Start with the denial of summary judgment on Jamoua's § 1981 claim. Michigan Farm Bureau argues, "[r]espectfully, there is a 'substantial ground for difference of opinion' as to whether this Court correctly determined that the undisputed record evidence gives rise to a triable issue of fact as to whether Jamoua can prove his § 1981 claim under *Comcast*'s but-for causation standard." (ECF No. 47, PageID.2322; *see also id.* at PageID.2324–2325 (similar).)

But, traditionally at least, this is not the type of "difference of opinion" that merits a § 1292 certificate. Courts "traditionally" find a substantial ground for difference of opinion where the question is difficult, novel, and precedent provides little guidance, "a difference of opinion exists within the controlling circuit," or "the circuits are split on the question." *In re Buccina*, 657 F. App'x 350, 351 (6th Cir. 2016) (internal quotation marks omitted). In contrast to these traditional categories, the question here (whether evidence satisfies but-for causation) is hardly novel. While the Supreme Court may have answered an open question in *Comcast*—what causation standard applies to discrimination claims brought under § 1981?—the test the Supreme Court directed district courts to apply is well worn. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020) (describing the but-for test as "ancient and simple").

And even if disagreement about whether this Court properly applied the but-for test is the type of disagreement that concerns § 1292(b), the Court is not convinced that there is a substantial ground for difference of opinion.

To appreciate this determination, a brief recap of how this Court previously ruled is helpful. In addressing Jamoua's § 1981 claim, the Court concluded, "evidence that [Paul] Wagner directed Jamoua to not sell to people of '[his] culture' in December 2017, along with evidence that Michigan Farm Bureau adjusted rates upwards in areas with significant Middle Eastern customers in or around 2018, would permit a reasonable jury to find that Defendants' racial animus was a but-for cause of Jamoua soliciting fewer policies in 2018 and 2019." *Jamoua v. Michigan Farm Bureau*, No. 20-CV-10206, 2021 WL 5177472, at *10 (E.D. Mich. Nov. 8, 2021). Regarding the rate setting, the Court highlighted evidence of high rates for residents of the 48310 zip code, an area with a significant Chaldean and Arab population. *See e.g.*, *id.* at *3 ("Sokol recalled that the rates for the 48310 were 'through the roof' whereas adjacent zip codes without a significant Middle Eastern population had lower rates.").

Michigan Farm Bureau maintains that the Court's two primary bases for allowing Jamoua's § 1981 claim to survive are erroneous or, at least, are open to difference of opinion. Regarding Wagner's directive, Michigan Farm Bureau stresses that Jamoua testified that he did not obey it. (ECF No. 47, PageID.2324.) As for the rate setting, Michigan Farm Bureau stresses that the Michigan Department of Insurance and Financial Services has approved its rates. (*Id.* at PageID.2323.) And, under Michigan law, an insurance company cannot set rates for auto insurance based

4

on "[t]he postal zone in which the insured resides." Mich. Comp. Laws § 500.2111(4)(f). Thus, Michigan Farm Bureau implies, its rates are in compliance with Michigan law, including the requirement of not using an insured's zip code to set rates. The upshot of all this, according to Michigan Farm Bureau, is that the Court's two primary bases for permitting Jamoua to present his § 1981 to a jury are wrong or, at the least, debatable.

Given the context of this Court's ruling and its limited nature, the Court disagrees.

Consider the context first. Notably, at summary judgment, Michigan Farm Bureau's opening brief included only the following two arguments directed to the § 1981 claim: (1) § 1981 only prohibits race discrimination and Jamoua alleges religious discrimination and (2) Jamoua cannot "point to a contractual right under his Agent Agreement that was impaired." (ECF No. 31, PageID.243–246.) Arguably then, the Court could have denied Michigan Farm Bureau's motion by simply finding that discrimination against Chaldeans includes race discrimination and that a provision of the agent agreement gave Jamoua the right to sell Michigan Farm Bureau insurance. (The Court, in fact, made those findings. *Jamoua*, 2021 WL 5177472, at *7–8.) It was only in its reply brief that Michigan Farm Bureau made some arguments that bear on causation. (ECF No. 39, PageID.2240.) But even there, Michigan Farm Bureau never mentioned "but-for" causation or *Comcast*. Now Michigan Farm Bureau faults the Court's causation analysis.

5

Next consider the scope of this Court's ruling. This Court did *not* find that the evidence establishes that Michigan Farm Bureau's racial animus was a but-for cause of Jamoua selling fewer policies in 2018 and 2019—that finding is debatable. The Court made a much narrower—and thus much less debatable—summary judgment finding. This Court merely found that when the evidence is taken in the light most favorable to Jamoua, a reasonable jury *could* find that Michigan Farm Bureau's racial animus was a but-for cause for Jamoua selling fewer policies. 2021 WL 5177472, at *12; *see also id.* at *8. And while the Court will not repeat itself here, there was evidence that despite Jamoua's statement that he ignored Wagner's directive, the directive in fact impacted the number of policies that he sold. *See id.* at *10. And there was evidence that Michigan Farm Bureau set rates high in 48310 (even as compared to adjacent zip codes). *See id.* at *3.

In all, given what Michigan Farm Bureau argued at summary judgment, given a legal standard that required all evidence to be taken in the light most favorable to Jamoua, and given that this Court merely opined on what a reasonable jury could find, this Court does not believe there are substantial grounds to disagree with its limited determination that a jury should decide Jamoua's § 1981 claim.

And even supposing that is wrong, and the Sixth Circuit would assess Jamoua's § 1981 claim differently, Michigan Farm Bureau has not shown that the § 1981 claim "involves a . . . question of law" as that phrase is used in § 1292(b). True, whether Michigan Farm Bureau was entitled to summary judgment on Jamoua's § 1981 claim is a question of law. That legal question lurks in every summary

6

judgment motion. Thus, it is not the type of question of law that concerns § 1292(b). *See Ahrenholz v. Bd. of Trustees of Univ. of Illinois*, 219 F.3d 674, 676 (7th Cir. 2000). As the Seventh Circuit explained in *Ahrenholz*, "We think 'question of law' as used in section 1292(b) has reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine rather than to whether the party opposing summary judgment had raised a genuine issue of material fact." *See* 219 F.3d at 676; *see also Malbrough v. Crown Equip. Corp.*, 392 F.3d 135, 136 (5th Cir. 2004) (citing *Ahrenholz* with approval); *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004) (same); *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, No. 16-CV-13655, 2017 WL 2222552, at *3 (E.D. Mich. May 22, 2017) (same).

Here, deciding whether the evidence would permit a reasonable jury to find that but-for Michigan Farm Bureau's racial animus, Jamoua would have sold more policies does not involve "the meaning of a statutory or constitutional provision, regulation, or common law doctrine," but instead is merely a question of "whether the party opposing summary judgment had raised a genuine issue of material fact." *See Ahrenholz*, 219 F.3d at 676. So the question-of-law requirement for a certification for interlocutory appeal is not met with respect to Jamoua's § 1981 claim.

In sum, this Court's order denying summary judgment on Jamoua's § 1981 claim does not satisfy at least one, and most likely two, requirements for a § 1292(b) certificate.

That leaves Jamoua's two ELCRA claims. These claims come a little closer to involving the type of pure "question of law" contemplated by § 1292(b). Regarding Jamoua's employment-discrimination claim, Michigan Farm Bureau argues that the statutory provision does not extend to independent contractors or, at least, to the specific independent-contractor relationship it had with Jamoua. (ECF No. 47, PageID.2325–2328.) And with respect to Jamoua's public-accommodations claim, Michigan Farm Bureau argues that the statutory provision only extends to a physical place, or, at least, does not extend to claims involving a "contract dispute." (ECF No. 47, PageID.2330–2331.)

Assuming—without deciding—that Jamoua's two ELCRA's claims do "involve[] a controlling question of law as to which there is substantial ground for difference of opinion," § 1292(b)'s third requirement is not satisfied. As noted, that requirement demands that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." And "[a]n interlocutory appeal materially advances the litigation when it 'save[s] judicial resources and litigant expense.'" *Newsome v. Young Supply Co.*, 873 F. Supp. 2d 872, 878 (E.D. Mich. 2012); *see also McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004) (explaining that materially advancing the litigation means "avoid[ing] a trial or otherwise substantially shorten[ing] the litigation"); *see also Patrick v. A. K. Steel Corp.*, No. 1:05-CV-000681, 2008 WL 11351555, at \*2 (S.D. Ohio May 29, 2008) (discussing materially advance requirement).

8

Here, a trial is likely even after an interlocutory appeal. Thus, an interlocutory appeal only consumes more resources and adds expense. Jamoua has several claims and they overlap. To be more precise, Jamoua has three claims based on the same theory: Michigan Farm Bureau's discrimination against Chaldeans and Arabs hampered Jamoua's ability to sell insurance policies. Thus, whether one, two, or three claims are tried, the number of witnesses and length of trial will be largely the same. So an interlocutory appeal only saves significant judicial resources and litigant expense if there is no trial at all, i.e., if the Court of Appeals reverses this Court on Jamoua's § 1981 claim *and* his employment-discrimination claim *and* his public-accommodations claim.

But the Court has already explained how the evidence supports its determination that Jamoua's § 1981 claim should be presented to a jury and that this claim is not appropriate for an interlocutory appeal. And even if the Court found otherwise, it still does not believe it is likely to be reversed on both ELCRA claims. As for Jamoua's ELCRA employment-discrimination claim, Michigan Farm Bureau disagrees with this Court's interpretation of *McClements v. Ford Motor Co.*, 704 N.W.2d 68 (Mich. 2005), arguing that the case "did not involve a claim by an independent contractor." (ECF No. 47, PageID.2326.) But this Court gave a defensible (if not outright correct) interpretation of *McClements. See Jamoua*, 2021 WL 5177472, at *12. And, as this Court also explained in its summary-judgment opinion, two judges of the Michigan Court of Appeals presented with the very contract at issue in this case found that an insurance agent can pursue a claim under ELCRA's

9

employment-discrimination provision. *Id.* at *12–13. As for the public-accommodations claim, Michigan Farm Bureau argues that this Court wrongly extended a provision aimed at preventing discrimination in places to cover mere contractual impairment (ECF No. 47, PageID.2331); but, as explained, a "place of public accommodation" under the ELCRA includes "a business" or "institution of any kind" "whose goods [or] services . . . are extended, offered, sold, or otherwise made available to the public." *See* Mich. Comp. Laws § 37.1301(a). An insurance company seems to fall within that broad description. None of this is to say that this Court correctly analyzed all three of these claims. But it is to say that while the Court may have swung and missed once, or even twice, it is not likely that it struck out completely.

A few other considerations also bear on the "materially advance" requirement for interlocutory appeal. This case has gone through discovery and summary judgment. Thus, a reversal now will not avoid those time-consuming and expensive parts of the case. *See W. Tennessee Chapter of Associated Builders & Contractors, Inc. v. City of Memphis*, 138 F. Supp. 2d 1015, 1026 (W.D. Tenn. 2000) ("[T]he role of interlocutory appeal is diminished when a case is nearing trial and large expenditures have already been made."). True, a trial is also time consuming and expensive. But an interlocutory appeal takes time and money too. Moreover, while Michigan Farm Bureau stresses that it may be forced to go through a trial to only then prevail on appeal, it is entirely possible that Michigan Farm Bureau will win at trial and not need to appeal. Finally, it is also possible that the parties will engage in

10

good-faith settlement discussions and try to resolve the case without the need for a trial.

In sum, given (1) the significant chance that at least one of Jamoua's claims will survive an interlocutory appeal, (2) that a trial on one claim would require similar resources as a trial on all three claims, (3) that this case is already at an advanced stage, and (4) that the Sixth Circuit might have to deal with piecemeal appeals, this Court finds that an interlocutory appeal is unlikely to "materially advance the ultimate termination of the litigation." Thus, even if Jamoua's two ELCRA's claims involve controlling issues of pure law, § 1292(b)'s third requirement is not met.

* * *

For the reasons given, this is not an "exceptional" case warranting interlocutory appeal. *See In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002). So the Court DENIES Defendants' motion to certify this Court's summary-judgment rulings for interlocutory appeal and to stay proceedings pending the appeal (ECF No. 47).

SO ORDERED.

Dated: May 9, 2022

                                                             s/Laurie J. Michelson
                                                             LAURIE J. MICHELSON
                                                             UNITED STATES DISTRICT JUDGE